## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

BRIAN RAEMAN,

Plaintiff,

-vs-

COUNTY OF ONTARIO, ONTARIO COUNTY
SHERIFF PHILIP POVERO, DAVID C.
TILLMAN and CHARLES L. TOMES JR.,

Defendants.

DECISION AND ORDER

12-CV-6009 CJS

## APPEARANCES

For Plaintiff:

Lawrence J. Andolina, Esq.
Trevett, Cristo, Salzer & Andolina P.C.
2 State Street, Suite 1000
Rochester, NY 14614
(585) 454-2181

For Defendants:

Kristen J. Thorsness, Esq.
Ontario County Attorney
Michael G. Reinhardt, Esq.
Ontario County Attorney's Office
27 North Main Street, 4th Floor
Canandaigua, NY 14424
(585) 396-4166

## INTRODUCTION

**Siragusa, J.** This employment discrimination case is before the Court on

Defendants' motion seeking either dismissal, or summary judgment. For the reasons stated

below, the application is granted in part, and denied in part.

## FACTUAL BACKGROUND

For the purposes of the motion to dismiss, the Court assumes the truth of the non-

conclusory allegations in the complaint:

11. In or around May, 1989, Mr. Raeman was hired as a correctional officer
with the OCSO, and was a member of the CSEA, Ontario County Sheriff's

Unit #7850-111, Ontario County Local 835.

12. At all relevant times, plaintiff performed his duties in an acceptable, professional, and highly competent manner.

13. In the summer of 1993, Mr. Raeman attended a retirement party at Club 86 in Geneva, New York. Defendant Tillman, a road sergeant at the time, was also at the party. While standing at the bar to order a drink, Defendant Tillman approached Mr. Raeman as his wife walked to up him, stating "Come on, Dave, let's go now." Defendant Tillman told her "You can go and Brian will give me a ride home." Defendant Tillman never asked Mr. Raeman for a ride in the past. Defendant Tillman's wife left without him.

14. About thirty (30) minutes later, Mr. Raeman was ready to leave the party and advised Defendant Tillman of such. They both walked to Mr. Raeman's van when Defendant Tillman said "Let's go to Gallagher's [another bar in Geneva, New York] and have a drink." Mr. Raeman objected because he had to work in the morning. However, defendant Tillman was persistent so they went to Gallagher's for about an hour. At that point, Mr. Raeman told defendant Tillman that if he wanted a ride home, he was leaving.

15. While driving down Route 14 towards defendant Tillman's house, Mr. Raeman felt defendant Tillman's hand on his leg. Mr. Raeman became increasingly uncomfortable and startled as defendant Tillman started rubbing his hand farther up his leg and said "Brian, I like you." Mr. Raeman responded, "Ok, Dave, you're cool too ... " But then defendant Tillman proceeded to put his hand on Mr. Raeman's genitals and tried to start rubbing him, saying, "No, I mean, I *really* like you!" Mr. Raeman then pushed his hand away and asked defendant Tillman the fastest way to his house. Defendant Tillman responded that they could drive the back way and asked Mr. Raeman to pull over. Mr. Raeman ignored him and kept driving. When Mr. Raeman pulled into the driveway, defendant Tillman sat in the van and would not get out. He kept leaning toward Mr. Raeman but he told him to get out and that he had to work in the morning. Defendant Tillman finally got out of the van and Mr. Raeman drove straight home.

16. During the first week of March, 2011, Mr. Raeman was in defendant Tillman's office, who was promoted to Undersheriff by this time, explaining to him the low morale in the jail and that the Sheriff did not care about what happened to the corrections officers in jail; rather, anytime they would report to the Sheriff about any unsatisfactory situation, he would pat them on the back and ask how their families were doing.

17. Upon information and belief, defendant Tillman, as Undersheriff, makes all decisions relating to the foregoing issues and is essentially responsible for

running the Sheriff's Office. Upon further information and belief, defendant Sheriff Povero delegates most, if not all, decisions to defendant Tillman.

18. After leaving defendant Tillman's office, Mr. Raeman used the photocopy machine around the corner from defendant Tillman's office. As Mr. Raeman starting to make photocopies, he felt a hand on his back rubbing up and down. Mr. Raeman turned to see defendant Tillman rubbing his back. Defendant Tillman then said, in a soft voice, "Can I still pat you on the back?" Mr. Raeman pulled away from him and gave him a disgusted look.

19. At no time did Mr. Raeman reciprocate the advances of defendant Tillman.

20. A week after the above-incident with Tillman, on March 11, 2010, defendant Tomes threw a stack of papers at another officer as a result of hearing that unhappy inmates wanted to file numerous grievances. This led to a comment by Mr. Raeman, which resulted in defendant Tomes telling him that he was being insubordinate and was sending him home on immediate suspension.

21. On March 12, 2010, Mr. Raeman returned to work for roll call. After roll call, defendant Tomes, Clarence Merrell, who was Mr. Raeman's union representative, and Mr. Raeman had a private meeting in the conference room to discuss what had happened on March 11th Defendant Tomes provided Mr. Raeman with his Notice of Proposed Disciplinary Action (hereinafter "NPDA") during this meeting. At the close of the meeting, Mr. Raeman initiated a handshake with defendant Tomes as a good faith gesture. Defendant Tomes started to shake his hand but instead he dug his fingernails into the palm of Mr. Raeman's hand and then he pulled Mr. Raeman towards him. Defendant Tomes then stated "You don't intimidate me" and pushed Mr. Raeman backwards. Mr. Raeman then stumbled and fell, hitting his head and lacerating his hand/finger.

22. Pictures were then taken of Mr. Raeman's hand and then he was sent to FF Thompson Hospital for examination.

23. As a result of the incident with defendant Tomes, Mr. Raeman sustained physical injuries.

24. When Mr. Raeman returned from the hospital, he gave a statement to Investigators Shaffer and Merrell and was then called into defendant Tillman's office along with union representative Adam Broadwell. Defendant Tillman ordered Mr. Raeman to surrender all of his identifications and told him that he was suspended indefinitely. Upon information and belief, defendant Tomes did not receive any reprimand for his conduct.

25. Upon information and belief, CSEA was told that an additional NPDA would be issued for Mr. Raeman upon his return from medical leave.

26. Mr. Raeman was suspended indefinitely prior to the completion of any investigations into the incident.

27. Upon information and belief, defendant Tillman was assigned to Mr. Raeman's case, but nothing has been done on his behalf.

28. Upon information and belief, defendants Tillman and Tomes are good friends. Defendant Tomes brags about his camping trips in the Carolinas with defendant Tillman and he spends many hours after work in defendant Tillman's office.

29. In addition, Mr. Raeman's requests to pursue criminal charges against defendant Tomes were denied by the Sheriff's Office. Mr. Raeman also filed a violence-in-the-workplace claim with Human Resources, but to date Mr. Raeman has no knowledge as to its outcome or status.

30. Until November 15, 2010, Mr. Raeman was out on medical leave as a result of the injuries caused by defendant Tomes and the mental stress related to working directly with him.

31. On November 15, 2010, Mr. Raeman was cleared to return to work. When he notified his employer that he was cleared to return to work, Mr. Raeman was told that he could not return until he was evaluated by an Ontario County psychologist. Mr. Raeman met with the Ontario County psychologist on January 21, 2011 and on February 9, 2011 he was cleared to return to duty.

32. Upon receiving clearance to return to duty, Mr. Raeman advised his employer, but did not receive a response for nearly a month.

33. On or about March 21, 2011, a meeting took place during which Mr. Raeman was issued a Notice of Proposed Disciplinary Action that informed him that he was suspended without pay for the above-mentioned incident with defendant Tomes that resulted in Mr. Raeman's visit to the local hospital. At this meeting, Mr. Raeman was further informed of the opportunity to present evidence to the same individual who decided to suspend him to prove why he should not be suspended.

34. On or about March 24, 2011, a hearing was held, pursuant to Article VI of the collective bargaining agreement, before defendant Sheriff Povero in which he denied Mr. Raeman's claims, and Mr. Raeman was then terminated from his position with OCSO.

Compl. ¶¶ 11–34. Plaintiff alleges: (1) Retaliation under Federal law in response to Plaintiff's allegation of sexual harassment and for the exercise of his First Amendment right to petition; (2) Creation of a hostile work environment as a result of sexual harassment under Federal law; (3) Retaliation under State law; (4) Creation of a hostile work environment as a result of sexual harassment under State law. Compl. at 7–11.

## STANDARDS OF LAW

### *Motion to Dismiss*

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained

in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir., 1991).The Court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.*; *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[1][b] (Matthew Bender

3d ed.) (court must accept plaintiff's factual allegations as true). Under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and that "all pleadings shall be so construed as to do substantial justice," FED. R. CIV. P. 8(f). On a Rule 12(b)(6) motion, the issue before the Court "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

### Sexual Harassment in the Workplace

A plaintiff claiming sexual harassment in the workplace may proceed on two different theories. As the district court explained in *Thanning v. Gulotta*, 898 F. Supp. 134 (E.D.N.Y. 1995):

> Sexual harassment in the workplace is a form of discrimination on the basis of sex that is prohibited by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, ——, 114 S. CT. 367, 371, 126 L. ED. .2d 295 (1993). A plaintiff seeking relief for sexual harassment may proceed under two theories: quid pro quo, and hostile work environment. *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.1994) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S. CT. 2399, 2404–2405, 91 L. ED. .2d 49 (1986) and *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992)). In order to state a claim for quid pro quo harassment, a plaintiff must sufficiently allege that "she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Id.* In order to state a claim for hostile work environment, a plaintiff must sufficiently allege that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment." Id. (quoting *Harris*, 510 U.S. at ——, 114 S. CT. at 370 and Meritor, 477 U.S. at 65, 67, 106 S. CT. at 2404–2405, 2405) (internal quotations omitted). In order to establish a basis for employer liability in a case where a supervisor is charged with creating the hostile work environment, a plaintiff must sufficiently allege that "the supervisor use[d] his actual or apparent authority to further the harassment, or [that] he was otherwise aided in accomplishing the harassment by the existence of the

agency relationship." *Id.* at 780.

*Thanning*, 898 F. Supp. at 138.

## ANALYSIS

### *Motion for Summary Judgment*

In opposing Plaintiff's request to conduct discovery before responding in detail to

the pending summary judgment motion, Defendants rely in part on the discussion in

*Serdarevic v. Advanced Medical Optics, Inc.*, 532 F.3d 1352, 1357-1358 (Fed. Cir. 2008),

which, in turn, relied on the Second Circuit's decision in *Contemporary Mission, Inc. v. U.S.*

*Postal Service*, 648 F.2d 97, 104 (2d Cir. 1981). In *Contemporary Mission*, the Second

Circuit affirmed the district court's denial of a Rule 56(f) motion for discovery. The Court

wrote:

> Stripped of its constitutional rhetoric, the complaint in this action alleges
> nothing more than that the Postal Service conducted an investigation to
> reevaluate appellant's entitlement to its nonprofit permit, held up its mail for
> one day in 1976, and concluded in May 1979 that the permit should be
> revoked. In an obvious effort to evade the strictures of administrative review
> and to intimidate postal officials, the plaintiff colored its complaint with
> conclusory allegations of a wide-ranging conspiracy to deprive it of its
> constitutional right to due process and free exercise of religion. But when
> summoned to the task of furnishing affidavits to demonstrate the existence
> of a genuine issue of material fact, the plaintiff feebly responded by noting
> immaterial inconsistencies in the defendants' affidavits ... and by making a
> desperate plea to allow discovery to substantiate its conclusory allegations.
> However, "(t)his court has repeatedly held that complaints containing only
> 'conclusory,' 'vague,' or 'general allegations,'" of conspiracy to deprive a
> person of constitutional rights cannot withstand a motion to dismiss. *Ostrer*
> *v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *see Black v. United States*,
> 534 F.2d 524, 527-28 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d
> Cir. 1972). And it is clear that a plaintiff cannot defeat a motion for summary
> judgment by merely restating the conclusory allegations contained in his
> complaint, and amplifying them only with speculation about what discovery
> might uncover.

*Contemporary Mission*, 648 F.2d at 106–07.

First, the Court notes that the requirements for obtaining relief under Federal Rule

of Civil Procedure 56[1] are as follows:

> "[A] party resisting summary judgment on the ground that it needs discovery
> in order to defeat the motion must submit an affidavit showing '(1) what facts
> are sought [to resist the motion] and how they are to be obtained, (2) how
> those facts are reasonably expected to create a genuine issue of material
> fact, (3) what effort affiant has made to obtain them, and (4) why the affiant
> was unsuccessful in those efforts.'"

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Gurary v.*

*Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Imeloff v. N.Y. Lif Ins. Co.*, 51 F.3d

372, 375 (2d Cir. 1995) (alteration in original))). Though the Rule has been amended, the

requirement under former Rule 56(f), now Rule 56(d), for showing that discovery is needed,

remain the same. *Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295,

304 (S.D.N.Y. 2011). In the Affidavit of Lawrence J. Andolina in Opposition to Defendants'

Motion to Dismiss or for Summary Judgment ¶ 10, Jun. 29, 2012, ECF No. 10-3, Mr.

Andolina states that, "[d]iscovery on this matter has not commenced."

In his opposing memo of law, Plaintiff relies in large part on the language in *Berger*

*v. United States*, 87 F.3d 60, 65 (2d Cir. 1996). There, the Second Circuit reversed a

district court's grant of summary judgment prior to discovery, stating:

> The district court correctly noted that "if after discovery, the nonmoving party
> 'has failed to make a sufficient showing on an essential element of [its] case

---

[1]In 2010, Rule 56 was amended and subdivision (d) now reads as follows:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows
by affidavit or declaration that, for specified reasons, it cannot present
facts essential to justify its opposition, the court may:
   (1) defer considering the motion or deny it;
   (2) allow time to obtain affidavits or declarations or to take discovery; or
   (3) issue any other appropriate order.

with respect to which [it] has the burden of proof,' then summary judgment is appropriate." [*Berger v. United States*, No. 3:94CV00051 (AVC), slip op. at 6 (D. Conn. Mar. 10, 1995)] (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations in Berger). However, the district court did not wait until "after discovery" to grant summary judgment. As noted above, the district court had granted a joint motion by the parties staying discovery until after the district court decided the legal issues presented by the cross-motions for summary judgment.

"The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, (1986)). While "the trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery," *id.*, the district court made no such finding here. On the contrary, the district court's order granted the parties' request to stay all discovery "until there is a final determination on [Berger's] motion for partial summary judgment," and there has been no discovery as yet in this action. Thus, we cannot conclude that the parties had already had "a fully adequate opportunity for discovery" when the district court granted summary judgment. *Id.* "In short, the grant of summary judgment here was premature." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *see also Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir. 1995) (reversing summary judgment entered before any discovery had taken place).

*Berger*, 87 F.3d at 65. Here, Plaintiff filed his complaint on January 5, 2012, and service was accomplished on April 18, 2012. Affidavits of Service, May 1, 2012, ECF No. 5-1. In lieu of filing answers, Defendants filed the pending motion. No Rule 16 conference has been scheduled, and the docket contains no indication that the parties have exchanged initial discovery pursuant to Rule 26(a).

This case is distinguishable from the cases Defendants rely on to deny discovery. This case is in its early stages, and no discovery has taken place. It is well settled in this Circuit that "'[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.'"*Trammell v. Keane*, 338 F.3d 155, 161 n.2 (2d Cir. 2003) (*quoting Hellstrom v. U.S. Dep't of Veterans*

*Affairs*, 201 F.3d 94, 97 (2d Cir.2000)). Accordingly, Defendants' application for summary judgement is denied.

### *Motion to Dismiss*

Defendants first contend that Plaintiff's claims are time barred in that the incidents that for the basis for his claims occurred more than 300 days prior to his filing of a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). Def.s' Mem. of Law at 7, May 22, 2012, ECF No. 7-1. Plaintiff does not allege the date upon which he filed a complaint with the EEOC, stating only that one was filed "within three hundred (300) days after the plaintiff's claims arose." Compl. ¶ 8. Filed with Plaintiff's motion papers is his affidavit dated April 14, 2011, and received by the EEOC on April 21, 2011, which is an indication that the EEOC complaint was filed on that date. If so, then claims prior to 300 days before April 21, 2011, or prior to Friday, June 25, 2010, would be barred if, as a prerequisite, those claims required an EEOC filing. *See Joiner v. American Red Cross*, No. 02-CV-6286-CJS, 2003 WL 360119, 3 (W.D.N.Y. Feb. 11, 2003) ("Pursuant to 42 U.S.C. § 2000e–5(e), as it applies in New York State, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act or violation. Failing that, the claim is time-barred. *Gomes vs. Avco Corp.*, 964 F.2d 1330, 13 32–33 (2d Cir.1992).").

As Plaintiff has conceded, the allegation of sexual harassment based on the 1993 incident is time barred. However, since, "[t]he gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.' 29 CFR § 1604.11(a) (1985)." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986), the earlier incident in Plaintiff's van is relevant evidence to characterize the later incident by the photo copier. Plaintiff's

allegations that defendant Tillman rubbed him on the back, when combined with Tillman's alleged sexual assault in 1993, and his statement at the time he rubbed Plaintiff's back, "in a soft voice, 'Can I still pat you on the back?'," raises a plausible claim that Tillman made unwanted sexual advances toward Plaintiff while at the photo copier. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) ("relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act.").

Defendant also argues, however, that Plaintiff has not sufficiently plead a claim for sexual harassment. As discussed above, a plaintiff may proceed on two different theories of sexual harassment: quid pro quo and hostile environment. Here, Plaintiff appears to have alleged hostile work environment in his second cause of action. Compl. ¶ 44 ("they created a hostile work envirnment."), ¶ 47 ("Plaintiff was subjected to a hostile work environment as a result of the defendants' conduct"), ¶ 48 ("plaintiff was subjected to a hostile work environment..."). The incidents alleged in the complaint fall short of plausibly alleging a work environment permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment. In its decision in *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55 (2d Cir. 1998), the Second Circuit provided further guidance on hostile work environment discrimination:

> Whether an environment is "hostile" or "abusive" depends on the totality of circumstances. *Harris*, 510 U.S. at 23. Courts must consider a variety of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors must be evaluated from both a subjective and an objective viewpoint. *Id.* at 21-22.

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998). The two allegations of alleged sexual harassment are insufficient to state a plausible claim for a hostile work environment.

Plaintiff argues in his memorandum of law that his retaliation claims are sufficient to withstand dismissal. Pl.'s Mem. of Law at 7 ("Mr. Raeman dismissed defendant Tillman's sexual advances [at the copier] and then *one week* later, defendant Tillman's close friend, defendant Tomes, physically assaulted Mr. Raeman."). A claim of retaliation consists of the following elements: "(1) he engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse action; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Shah v. New York State Dept. of Civil Service*, 341 Fed. Appx. 670, 673, (2d Cir. 2009).

The copier incident was followed one week later by the following incident: "defendant Tomes threw a stack of papers at another officer as a result of hearing that unhappy inmates wanted to file numerous grievances. This led to a comment by Mr. Raeman, which resulted in defendant Tomes telling him that he was being insubordinate and was sending him home on immediate suspension." Compl. ¶ 20. Thereafter, on March 12, 2010, Plaintiff alleges that a meeting was held involving him, Tomes and Clarence Merrell, a union representative. Compl. ¶ 21. At the close of the meeting, Plaintiff alleges that he initiated a handshake with Tomes as a good faith gesture, in response to which Tomes dug his fingernails into the palm of Plaintiff's hand, pulled Plaintiff towards him and said, "You don't intimidate me," then pushed Plaintiff backwards, causing him to fall and hit his head and lacerate his hand and/or finger. *Id.*

Assuming that the protected activity in which Plaintiff was engaged was withdrawal from Tillman's alleged sexual advances at the photo copier, Plaintiff's argument seems to be that the retaliation was by Tillman's close friend, Tomes, when Tomes allegedly assaulted Plaintiff, ultimately resulting in Plaintiff's termination. Of course, without a showing that he was engaged in a protected activity, Plaintiff cannot make a plausible claim of discriminatory employment retaliation. *C.f. McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001) ("Our decisions have emphasized, however, that an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied. The plaintiff is only required to have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII."). Does withdrawing from what one perceives as a sexual advance by one's employer constitute a protected activity? The Eastern District addressed the question in *Reid v. Ingerman Smith LLP*, No. 12 Civ. 0307 (ILG) (MDG), 2012 WL 2700508 (E.D.N.Y. Jul. 6, 2012). There, Judge Glasser wrote:

> Although neither party provides briefing on the issue, whether rejecting a harasser's sexual advances constitutes a "protected activity" for retaliation purposes is an open question in the Second Circuit, FN12 *see Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir.2001) ("We need not rule on the district court's view that rejection of sexual advances is not a protected activity under Title VII."), and an object of debate among district courts in the circuit (and around the country), *compare Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 386 (S.D.N.Y.2002) ("[R]ejecting sexual advances from an employer does constitute 'protected activity'. The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination. Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct."), *and Johnson v. Medisys Health Network*, No. 10 Civ. 1596(ERK)(VP), 2011 WL 5222917, at *15 (E.D.N.Y. June 1, 2011) (noting split in authority and following *Little*), *with Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438–39 (S.D.N.Y. 1996) (concluding that "even the broadest interpretation of a retaliation claim cannot encompass instances

where the alleged 'protected activity' consists simply of declining a harasser's sexual advances, which is all that is alleged here by way of 'protected activity'"), *and Fitzgerald v. Henderson*, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds*, 251 F.3d 345 (2d Cir.2001) (following *Del Castillo* and *Rashid v. Beth Israel Med. Ctr.*, No. 96 Civ. 1833(AGS), 1998 WL 689931, at *2 (S.D.N.Y. Oct.2, 1998)).

The Court adopts the view that the rejection of sexual advances does not constitute a protected activity. If resisting the advances of a harasser constitutes a "protected activity," then "every harassment claim would automatically state a retaliation claim as well." *Del Castillo*, 941 F. Supp. at 439. Moreover, one of the key purposes of the retaliation provisions in anti-discrimination statutes such as Title VII and the NYSHRL is "preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [statute's] basic guarantees." *Burlington*, 548 U.S. at 61. But if one makes no effort to secure or advance the guarantees of an anti-discrimination statute by taking any action in response to allegedly discriminatory conduct, there can be nothing for the employer to interfere with.

*Reid*, 2012 WL 2700508, at 9 (Footnote 12 noted, "Both the Fifth and Eighth Circuit have addressed the issue, and their conclusions are at odds. *Compare LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir.2007) (rejection of sexual advances not protected activity), *with Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir.2000) (rejection of sexual advances is "the most basic form of protected activity").).

The Court is persuaded by Judge Glasser's reasoning and determines that Plaintiff's actions in this case constituted rejection of sexual advances, not protected activity. Consequently, his retaliation claim cannot withstand Defendants' motion for dismissal under Rule 12(b)(6).

### State Law Claims

Having dismissed Plaintiff's Federal claims, causes of action one and two, the Court turns to the remaining two claims, both plead under State law. Pursuant to 28 U.S.C. § 1367(c) (1990), a district court may decline to exercise ancillary jurisdiction state law

claims. As the Second Circuit noted in *Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255 (2d Cir. 2006):

> It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) ("'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991). In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the "*Cohill* factors." *See Cohill*, 484 U.S. [343] at 350 [(1988)].

*Klein & Co. Futures, Inc.*, 464 F.3d at 262–63. In view of the early stage of this litigation, and that New York may interpret the State law of employment discrimination in a different manner than the Federal courts have interpreted Federal anti-discrimination statutes, the Court determines that it will exercise its discretion to decline jurisdiction over the State claims, dismissing them without prejudice.

## CONCLUSION

Defendants' motion for summary judgment is denied. Defendants' motion to dismiss is granted in part, and the first two causes of action, both plead under Federal law, are dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pursuant to 28 U.S.C. § 1367(c)(3) (1990), the Court declines to exercise jurisdiction over the remaining state law claims in the third and fourth causes of action, and those causes of action are dismissed without prejudice. The Clerk is directed to enter judgment for Defendants on the first two causes of action with prejudice, and enter

judgment on the third and fourth causes of action for Defendants without prejudice, and

close this case.

IT IS SO ORDERED.

Dated:   March 11, 2013
         Rochester, New York

ENTER:

CHARLES J. SIRAGUSA
United States District Judge